**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000573
17-FEB-2026
07:52 AM
Dkt. 53 SO**

NO. CAAP-23-0000573

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE
CERTIFICATEHOLDERS CITIGROUP MORTGAGE LOAN TRUST INC.
ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2007-AHL3,
Plaintiff/Counterclaim Defendant-Appellee,
v.
PHYLLIS KEHAULANI DUNCAN CHUN,
Defendant/Counterclaim Plaintiff-Appellant,
and
ARROW FINANCIAL SERVICES, LLC, Defendant-Appellee,
and
JOHN AND MARY DOES 1-20, DOE PARTNERSHIPS,
CORPORATIONS, OR OTHER ENTITIES 1-20, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC141002192)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, and Wadsworth and Guidry, JJ.)

Defendant/Counterclaim Plaintiff-Appellant Phyllis
Kehaulani Duncan Chun (**Chun**), self-represented, appeals from the
September 28, 2023 Judgment entered in favor of Plaintiff/
Counterclaim Defendant-Appellee U.S. Bank National Association as
Trustee for the Certificateholders Citigroup Mortgage Loan Trust
Inc. Asset-Backed Pass-Through Certificates Series 2007-AHL3
(**U.S. Bank**) by the Circuit Court of the First Circuit.[1]  Chun
also challenges the Circuit Court's September 12, 2023 Findings
of Fact and Conclusions of Law and Order (**FOFs/COLs**).

---

[1]  The Honorable Jeffrey P. Crabtree presided.

In return for a loan (**Loan**), Chun executed a promissory note (**Note**) in favor of Accredited Home Lenders, Inc. (**Accredited**).  The Note was secured by a mortgage (**Mortgage**) on certain real property owned by Chun.  Later, the Loan was conveyed and the Mortgage was assigned to U.S. Bank; the servicing of the Loan was transferred to Select Portfolio Servicing, Inc. (**SPS**).

After Chun defaulted on the Note, U.S. Bank filed a foreclosure complaint against her.  Chun answered the complaint and filed a counterclaim against U.S. Bank.  During the course of the litigation, U.S. Bank and Chun filed various motions for summary judgment, all of which were ultimately denied.  Following a three-day jury-waived trial, the Circuit Court entered (1) an interlocutory decree of foreclosure as requested by U.S. Bank, and (2) judgment in favor of U.S. Bank on the complaint and the counterclaim.

On appeal, Chun contends that the Circuit Court erred in "determining that SPS had possession of [the Note] since 2012 and . . . [U.S.] Bank is the owner of Chun's Mortgage and . . . Note thereby entitling standing [sic] to bring this wrongful foreclosure action against Chun."  (Capitalization altered.)  Relatedly, Chun challenges FOFs 9 through 17, COLs 5 through 43, and the Judgment.

We review a trial court's findings of fact under the clearly erroneous standard.  Wells Fargo Bank, N.A. v. Behrendt, 142 Hawaiʻi 37, 40, 414 P.3d 89, 92 (2018) (citing Dan v. State, 76 Hawaiʻi 423, 428, 879 P.2d 528, 533 (1994)).  A finding of fact "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made."  Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007) (quoting Troyer v. Adams, 102 Hawaiʻi 399, 409-10, 77 P.3 83, 93-94 (2003)).  We review conclusions of law de novo under the right/wrong standard.  Behrendt, 142 Hawaiʻi at 40-41, 414 P.3d at 92-93 (citing Marvin v. Pflueger, 127 Hawaiʻi 490, 495, 280 P.3d 88, 93 (2012)).  "[A

conclusion of law] that is supported by the trial court's [findings of fact] and that reflects an application of the correct rule of law will not be overturned." Est. of Klink, 113 Hawai'i at 351, 152 P.3d at 523 (quoting Thompson v. Kyo-Ya Co., 112 Hawai'i 472, 474, 146 P.3d 1049, 1051 (2006)). A mixed finding of fact and conclusion of law is reviewed under the clearly erroneous standard because it depends on the facts and circumstances of the case. Id. (quoting Thompson, 112 Hawai'i at 474, 146 P.3d at 1051).

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Chun's contentions as follows and affirm.

At the outset, Chun appears to contend that U.S. Bank lacked standing to enforce the Note when the foreclosure complaint was filed.

A foreclosing plaintiff must establish its standing to enforce the subject promissory note when the complaint was filed. See Bank of Am., N.A. v. Reyes-Toledo, 139 Hawai'i 361, 368, 390 P.3d 1248, 1255 (2017). A person entitled to enforce the note includes the "holder," defined in this context as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" HRS §§ 490:1-201(b), :3-301 (2008); see U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust v. Verhagen, 149 Hawai'i 315, 327-28, 489 P.3d 419, 431-32 (2021) (ruling that the foreclosing plaintiff presented admissible evidence showing its actual or constructive possession, through its loan servicer, of the note indorsed in blank when the complaint was filed).

Here, U.S. Bank has asserted that through its servicing agent SPS, it was the holder in possession of the Note and Allonge to Note (**Allonge**),[2] indorsed in blank, at the time the

---

[2]     An allonge is a "paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Behrendt, 142 Hawai'i at 39 n.1, 414 P.3d at 91 n.1 (quoting Mortgage Elec. Registration Sys., Inc. v. Wise, 130 Hawai'i 11, 14 n.6, 304 P.3d 1192, 1195 n.6 (2013)).

complaint was filed on October 20, 2014.  At trial, U.S. Bank presented substantial evidence supporting this assertion.  This evidence included the testimony of Patrick Pittman (**Pittman**), the SPS Litigation Director and Document Control Officer with approximately 21 years of experience working for SPS.  He stated that he is familiar with the practices and procedures of SPS and the systems of record that SPS uses to create and record information related to the residential mortgage loans that it services, including the process by which information is entered into those systems and how those records are maintained.

FOFs 21 through 36, which Chun does not dispute,[3] further summarized Pittman's testimony and the related documentary evidence as follows:

> 21.  Where, as here, SPS acquires the servicing rights from a prior servicer, the prior servicer's records for the loan are incorporated and boarded into SPS's systems such that the prior servicer's records concerning the loan are part of SPS's business records.  SPS relies upon the accuracy of those boarded records in providing its loan servicing functions.
>
> 22.  Prior to boarding a loan into SPS's system platform, SPS conducts a data vetting process or reconciliation process of all information that is received from the prior servicer.  Hard copy documents are also reviewed to find any data discrepancies. . . .
>
> 23.  SPS works with the prior servicer regarding any data discrepancies or inaccuracies that are found.  All loans that are boarded into SPS's system platform have gone through the data vetting process.  Those records that were previously incorporated into the prior servicer's records are then incorporated into SPS's records.
>
> 24.  On or about September 27, 2012, SPS performed an audit of the original documents for the Loan, including the original wet-ink Note and Allonge to Note (together the **"Original Note and Allonge"**), the original Mortgage, and the original Title Policy for the Loan (collectively, the **"Collateral File"**).
>
> 25.  On or about September 27, 2012, images of the Original Note and Allonge, which accurately depict the Original Note and Allonge (indorsed in blank), were scanned and uploaded into SPS's database.
>
> . . . .
>
> 28.  On or about October 10, 2012, the Collateral File for the Loan, including the Original Note and Allonge, was

---

[3]  See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) (unchallenged findings of fact are binding on appeal).

placed into SPS's secured vault facility. . . .

29.  In December 2015, the Collateral File for the Loan, including the Original Note and Allonge, was relocated from the secured vault facility at [SPS's] initial headquarters location to the secured vault facility at SPS's new headquarters (**"Decker Lake"**), both locations being within Salt Lake City, Utah.

30.  According to the Audit Report for the File Trail System, which tracks the movement of the collateral file, no one accessed, and there was no movement of, the Collateral File for the Loan between November 8, 2012 and December 4, 2015. . . .

. . . .

32.  On or about May 5, 2016, the Collateral File for the Loan was pulled from shelf location 1HK5 in SPS's secured vault facility at Decker Lake.  The Original Note and Allonge were removed from the Collateral File and sent to U.S. Bank's foreclosure counsel Leu Okuda & Doi (the **"Leu Firm"**) with a Bailee Letter.

. . . .

36.  Pittman testified that based on his review of SPS's business records relating to the Loan, [U.S. Bank], through its agents, had possession of the Original Note and Allonge at the time the Complaint was filed on October 20, 2014, and at all other times from September 2012 through present.

(Record citations omitted.)  Substantial evidence thus supported FOF 48 that "U.S. Bank (through its servicing agent SPS) had possession of the original duly indorsed Note and Allonge at the time this action was commenced on October 20, 2014."

Further testimony by U.S. Bank's counsel Lansen Leu and forensic document examiner Kathleen Nicolaides established that U.S. Bank maintained possession of the Original Note and Allonge through trial.  At trial, the Original Note and Allonge were authenticated and admitted into evidence as Exhibit P-90.  The Circuit Court thus concluded in COLs 25 and 27, as follows:

25.  The documentary evidence and witness testimony presented by U.S. Bank at trial clearly established by more than a preponderance of the evidence that U.S. Bank had continuous actual or constructive possession (through SPS, the Leu Firm and Nicolaides) of the Original Note and Allonge from September 2012 through trial, including on October 20, 2014 when the Complaint was filed.

. . . .

27.  U.S. Bank clearly established by more than a preponderance of the evidence that it has standing, and was entitled to bring the lawsuit at the time the Complaint was filed.

5

These mixed determinations of fact and law are supported by substantial evidence in the record and are not clearly erroneous.  See Verhagen, 149 Hawaiʻi at 327-28, 489 P.3d at 431-32.

Chun cites no contrary evidence or offers any persuasive explanation as to why these determinations are clearly erroneous.  Rather, she argues generally that: (1) "Chun does not have a contract binding her with . . . U.S. Bank, or stranger and non-party SPS"; (2) "[U.S. Bank's] complaint . . . provides no admissible evidence of a possession of Chun's note or mortgage at case commencement"; (3) "[U.S. Bank] provides no evidence of actual damages incurred by Chun [sic] to entitle [U.S. Bank] to a trial or invoke any of the remedial powers of the courts"; and (4) "[U.S. Bank's] witnesses bringing forth statements on behalf of Accredited Homelenders [sic] records with no evidence that they are legitimately entitled to speak on behalf of Accredited nor is there any evidence that accredited assigned the Note to any of these alleged entities."  (Capitalization altered.)

Chun's first and fourth arguments miss the point.  U.S. Bank submitted substantial evidence that it possessed the Note and Allonge at the time the complaint was filed through trial.  As the holder of the Note, U.S. Bank was entitled to enforce it as against Chun.  And Chun's second argument fails in light of the substantial evidence supporting U.S. Bank's possession of the Note during the relevant period, to which Chun did not object at trial.  As to Chun's third argument, the Circuit Court found in FOF 50, which Chun does not contest and which substantial evidence supports, that Chun has not made a payment on the Loan since October 15, 2009.

In any event, based on our review of the record, we conclude that substantial evidence also supports FOFs 9 through 17,[4] which are part of a series of FOFs in which the Circuit Court found:  (i) Chun executed the Note and Mortgage originated by Accredited and agreed to make monthly payments on the Loan

_____

[4]      Chun contests only FOFs 9 through 17.  Any challenge to the remaining FOFs is waived.  See Okada Trucking, 97 Hawaiʻi at 458, 40 P.3d at 81; Hawaiʻi Rule of Appellate Procedure (**HRAP**) Rule 28(b)(7).

(FOFs 3-7); (ii) Chun, in executing the Mortgage, agreed that the Note "c[ould] be sold one or more times without prior notice to [her]" and that the servicer of the Loan could change (FOF 8); (iii) the Loan was conveyed to U.S. Bank in 2007 (FOFs 9-11); (iv) the Mortgage ("[t]ogether with the [N]ote") was assigned to U.S. Bank (FOF 14); and (v) effective August 16, 2012 (and with notice to Chun), the servicing of the Loan was transferred to SPS, which "is, and was at all times relevant, the attorney-in-fact and agent for U.S. Bank with respect to the Loan" (FOFs 12-13, 15-18).  The testimony and documentary evidence supporting each of these FOFs is cited therein.  Chun cites no contrary evidence or offers any persuasive explanation as to why FOFs 9 through 17 are clearly erroneous.  We conclude they are not.

Chun appears to challenge COLs 5 through 43 based on U.S. Bank's alleged failure to prove it possessed the Note when the complaint was filed.  That argument fails for the reasons previously stated.  Chun does not otherwise challenge the Circuit Court's conclusions that her counterclaims fail on alternative grounds.  Any such arguments are therefore deemed waived.  See HRAP Rule 28(b)(7).

For the reasons discussed above, the Judgment entered on September 28, 2023, by the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, February 17, 2026.


On the briefs:

Phyllis Kehaulani Duncan Chun,
Self-represented
Defendant/Counterclaim
Plaintiff-Appellant.

Patricia J. McHenry,
Allison Mizuo Lee, and
Michi Momose
(Cades Schutte LLP)
for Plaintiff/Counterclaim
Defendant-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge